UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF WEST VIRGINIA

Harry E. Walkup, Jr.

Plaintiff


FILED
APR 2 0 2017
TERESA L. DEPPNER, CLERK
U.S. District Court
Southern District of West Virginia

V

Case number: 5:17CV02419

CIVIL ACTION NO. 5:01-CV-0513

Erie Insurance Property & Casualty Co.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Enclosed is a Memorandum of Law,

    Some explanation of delay, and

    Some comments on Plaintiff's financial status

These cases relate to subsection (5) of Rule 60(b), Federal Rules of Civil Procedure, or

Its counterparts.

MEMORANDUM OF LAW

(1) <u>Fahlen v Mounsey</u>, 728 P2d 1097, Wash. 1986.

Although a state case, it relates to habeas corpus relief entitling defendant to relief from a second judgment based on his felony conviction. Also, issues decided against a criminal defendant in a proven prosecution are not binding in a later civil proceeding if the defendant was denied a full and fair opportunity to defend himself in the Prosecution. This case cites <u>Butler v Eaton</u>, 141 US 240, 35 Led 713, 11 S Ct 985 (1891) at 256-247, construing Fed R. Civ P. 60(b)(5). Also cites <u>Wood v Georgia</u>, 459 US 261, 274 n.21, 67 L.Ed. 220, 101 SCt 1097 (1981) where the U.S. Supreme Court stated in dicta that the practical effect of Habeas Corpus relief is to vacate or reverse the state court judgment. Also other references. This case also addresses the inappropriateness of employing collateral estoppel between felony conviction and subsequent civil action where defendant did not have a "full and fair" opportunity to litigate the issues of a criminal trial. Defendant was denied fundamental right to defend himself in the criminal action, hence, no collateral estoppel.

(2) <u>Domino's Pizza, Inc. v Friedland</u>, No. 87 C 8663, 1991 U.S. Dist. Lexis, 13369. From the U.S. District Court for Northern District of Illinois, Eastern Division. Friedland was convicted for theft, and the District Court granted Domino's Motion for Summary Judgment against Friedland in 1988. In 1990, the Illinois Appellate Court reversed Friedland's criminal conviction and remanded for a new trial. Friedland now moves the Court to vacate its order granting summary judgment

as that order was based on his conviction which has been reversed. Hence, this federal district court held that the basis that Domino's used in support of its summary judgment has been abrogated, and vacated the summary judgment order and moved that the summary judgment order be stricken.

(3) Gustafson v Gustafson, 772 P2d 1031, Wash. 1989. This state case references the 4th Circuit case, Werner v Carbo, 731 F 2d 204 (4th 1984), and Fed. R.Civ.P. 60(b)(5), the court held that the judgment against the corporation "rested" upon the judgment against Dr. Carbo, so that then the judgment against him was vacated, Fed R Civ P (60(b)(5) allows for vacation of the judgment against the corporation. "The judgment against the Professional Corporation was wholly derivative of, coexistent with, and limited by the judgment against Carbo" 731 F 2d at 209. This state decision also references Reed v Allen, 286 US 191, 76 Led 1054, 52 S Ct 532 (1932), moving the district court in the second action to set aside the judgment for the reason that the first judgment, which formed the basis for the second judgment, has been reversed or otherwise vacated. Fed. R.Civ. P. 60(b)(5).

(4) Werner v Carbo, 731 F 2d 204 (4th 1984), Subsection (5) of Rule 60 (b) allows relief from a judgment if "a prior judgment upon which it is based has been reversed or otherwise vacated". The 4th Circuit here comments that this subsection and its common law and equitable antecedent have been applied primarily in cases in which a judgment itself is necessarily considered in a later action. See Butler v Eaton, 141 US 240, 35 Led 713, 11 SCt 985 (1891). In other words, a "judgment...based on another judgment", reference to Pierce Oil Corp.

v United States, 9 FRD, 619 (E.D. Va. 1949). One judgment "rests" upon another which has been reversed or otherwise vacated. The 4th Circuit in Werner v Carbo also emphasized that even when no appeal was taken from the second judgment,, the first judgment was reversed upon appeal, so that Rule 60(b)(5) permits relief. Reed v Allen, 286 US 191, 76 Led 1054, 52 SCt 532 (1932).

The above is true and correct to the best of my knowledge and belief.

*Harry E. Walkup* 4/19/17

Harry E. Walkup, Jr.

## SOME EXPLANATION OF DELAY AND FINANCES

Plaintiff first learned that his conviction has been vacated a few days after, in late June 2016, through his Public Defender, Joshua Edwards, of Lewisburg, W.V.. Mr. Edwards, however, voiced his certainty that the Order would be appealed, probably perfected by the W.V. Attorney General's Office, and answered by the central office of Public Defenders, and that he would "keep you in the loop". Realizing that these thing take many months, and not hearing from Mr. Edwards, Plaintiff called him around December 16, 2016, and was told, well, he guessed no appeal had been made afterall.

Plaintiff owes over a million dollars in past child support and alimony which was allowed to accrue while he was in prison, despite his attempts to change this. For the past year, the Child Support Enforcement Bureau has garnished his Social Security, his sole income, leaving him $690 per month to live on. His youngest child is 22 years old, and his ex-wife is a Registered Nurse with a home and 65 acres. Petitioner owns nothing of value, not even a car, and must borrow a vehicle to get groceries. Hence, Plaintiff busied himself the best he could to address these issues. Plaintiff suffers from a severe Panic Disorder with suicidality, anticipatory anxiety, agoraphobia, severe social phobia, and co-existent Post Traumatic Stress Disorder, with truly severe psychic pain (dysphoria), and an exaggerated response to even trivial losses, and is so easily overwhelmed and paralyzed with psychic pain. He has not been gainfully employed in seven years, and signed up for early Social Security six years ago (he is now 68 years old).

Petitioner spoke to an attorney in Lewisburg, W.V., whom he knew from years back,(Steve Hunter), who said he would help him Pro Bono with this federal case. That was several months ago. He has since had a murder trial, then a complicated pipeline case, has not returned two phone messages or responded to a letter. Petitioner also felt so overwhelmed about the complications of a federal proceeding. It is extremely difficult for him to spend time around other people, or be in a situation where escape might be impossible in case of a severe panic attack. The pain is so awful that death seems preferable, and has been so unrelenting this past year, especially this winter. Plaintiff lives in a very rural area with little legal resources and must use the public library, as he is doing at this moment.

Petitioner did finally get some case law from a friend who is an attorney but not in practice. Plaintiff has to borrow a vehicle to come to Beckley, and even that trip is daunting. Plaintiff is not complaining, just explaining. Plaintiff's Mother is almost 93 but she still helps him with finances.

The above is true and correct to the best of my knowledge and belief.

*Harry E. Walkup* 4/19/17

Harry E. Walkup, Jr.

IN THE CIRCUIT COURT OF POCAHONTAS COUNTY, WEST VIRGINIA

HARRY E. WALKUP, JR.,
Petitioner,

v.  Civil Action No. 17-P-12

MARY M. WALKUP,
Respondent.

ORDER

On March 10, 2017, the Petitioner, Harry E. Walkup, Jr. (hereinafter sometimes referenced as "Mr. Walkup"), initiated this proceeding by filing his *Petition to Vacate Final Divorce Order of November 29, 2001, Under Rule 60(b) of the West Virginia Rules of Civil Procedure Based on Newly Discovered Evidence Having the Effect of Fraud on the Court.* Upon careful consideration of the said Petition, this Court is of the opinion that jurisdiction over the subject matter of the said Petition does not lie with this Court, for reasons more fully set forth below.

The parties to this action were divorced from one another by order entered by the Circuit Court of Pocahontas County, West Virginia, on or about April 6, 1998, in Civil Action No. 96-D-39. Following the entry of the final divorce order, the Court retained jurisdiction over the parties and over the subject matter of Civil Action No. 96-D-39, so as to resolve issues of equitable distribution, attorney fees, alimony and child support. Before all remaining issues in the divorce action could be fully resolved, Mr. Walkup was convicted of second degree arson, arson causing injury, breaking and entering, and retaliation against a witness, following a jury trial conducted in January 2001, before the Circuit Court of Greenbrier County, West Virginia. As a result of these convictions, Mr. Walkup was sentenced to an extended period of incarceration in the custody of the West Virginia Division of Corrections.

POCAHONTAS COUNTY
CIRCUIT/FAMILY COURT
RECEIVED 4-12-17
by: CMC/CDB

1-B

Thereafter, by Final Order entered in the divorce action on November 29, 2001, the Court found that Mr. Walkup had the ability to pay child support and alimony from the corpus of his separate estate, notwithstanding the fact that he was then incarcerated. The Court therefore required that Mr. Walkup continue to make child support payments in the amount of $3,250 per month and alimony payments in the amount of $2,250 per month. Although Mr. Walkup has from time to time sought modification of the Court's Final Order requiring these payments, it appears that he did not exercise his right to appeal the Court's decision relative to these issues to the Supreme Court of Appeals of West Virginia.

During the period of Mr. Walkup's incarceration, he petitioned the Circuit Court of Greenbrier County for a writ of habeas corpus, in an action designated as Civil Action No. 02-C-113. Mr. Walkup's various petitions and amended petitions for writ of habeas corpus did not result in his release from imprisonment, but he was eventually released from the custody of the Division of Corrections upon parole. He thereafter amended his petition in Civil Action No. 02-C-113 to seek the reversal of his convictions pursuant to a writ of coram nobis. By Order entered by the Circuit Court of Greenbrier County on or about June 16, 2013, Mr. Walkup's convictions were reversed and vacated, on the grounds that he had been deprived of effective assistance of counsel at trial.

His criminal convictions having now been set aside, Mr. Walkup seeks to have his alimony and child support orders vacated, asserting that the Circuit Court's Order granting his petition for writ of coram nobis is "new evidence" relevant to his divorce action. In his *Petition to Vacate Final Divorce Order of November 29, 2001, Under Rule 60(b) of the West Virginia Rules of Civil Procedure Based on Newly Discovered Evidence Having the Effect of Fraud on the Court*, Mr. Walkup does not indicate when he became aware of the facts that ultimately led the Circuit Court of Greenbrier County to conclude that he had been deprived of effective

/~C

assistance of counsel in his criminal case, nor does he address the requirement of Rule 60(b) that a motion for relief from judgment based upon newly discovered evidence or fraud be filed "not more than one year after the judgment, order, or proceeding was entered or taken." *See also* W.Va. Code, § 51-2A-10 (establishing time period for filing motions for reconsideration before family courts).

Regardless of the strength or weakness of Mr. Walkup's arguments, it is not the province of this Court to resolve the issues he raises in his Petition. Since the creation of the family court system by legislation enacted in 2001, actions for divorce and related matters have been within the jurisdiction of the family courts of this State. *See* W.Va. Code, §51-2A-2(a).[1] To facilitate the implementation of the new family court system, the Supreme Court of Appeals promulgated the Rules of Practice and Procedure for Family Court, including Rule 3 of those Rules, which provides in part as follows:

> Effective January 1, 2002, all family court cases pending before the circuit court, whether on review of recommended order or otherwise, shall be transferred to the jurisdiction of the family court.

Since January 1, 2002, the Family Court of Pocahontas County has consistently exercised jurisdiction over all matters concerning the parties' divorce, including numerous issues related to the modification and enforcement of child support and alimony. This Court is therefore of the opinion that it lacks jurisdiction over the subject matter of the pending *Petition to Vacate Final Divorce Order of November 29, 2001, Under Rule 60(b) of the West Virginia Rules of Civil Procedure Based on Newly Discovered Evidence Having the Effect of Fraud on the Court*, and that the same should be dismissed for want of subject matter jurisdiction.

---

[1] The Circuit Court has concurrent jurisdiction with the Family Court regarding certain family law matters, as provided in W.Va. Code, §51-2A-2, as well as appellate jurisdiction over family law cases decided by the Family Court. *See* W.Va. Code, §51-2A-11.

/-D

It is accordingly ADJUDGED, ORDERED and DECREED that the *Petition to Vacate Final Divorce Order of November 29, 2001, Under Rule 60(b) of the West Virginia Rules of Civil Procedure Based on Newly Discovered Evidence Having the Effect of Fraud on the Court* previously filed herein is hereby DISMISSED, without prejudice. Upon entry of this Order, the Clerk of this Court is directed to remove this action from the Court's docket, and to provide a copy of this Order to the Petitioner, Harry E. Walkup, Jr., and to the Respondent, Mary M. Walkup.

ENTER: April 12, 2017

*[signature]*

Robert E. Richardson, Circuit Judge

A TRUE COPY, Certified this 12th day of April, 2017.
Connie M. Cann, Clerk
POCAHONTAS COUNTY CIRCUIT/FAMILY COURT
Marlinton, West Virginia 24954
By Cindy D. Beverage, Deputy

1-E